Good morning. May it please the Court, my name is Joanne Callum, Pro Rappellant in Washington. I'd like to start by just quickly going over why Mr. Washington didn't have three strikes. You have to speak up, Counsel. I'm sorry. No, it's fine. Mr. Washington did not have three strikes. Some of it has to do with some of the topics that were discussed in the last matter. Two of the dismissals that the District Court counted as strikes were mandamus petitions. They were brought under the All Writs Act, but if you look at what they were asking for, it was to compel the California Supreme Court to exercise its discretion regarding a claim he had of an illegal sentencing enhancement. That's habeas type relief, as was discussed in the prior matter. An action that is in essence a habeas type action should be construed as a habeas action, even if it wasn't brought that way. Also, there's a case law saying cases that are brought under the All Writs Act are not subject to the PLRA. And then further, a case under the All Writs Act- Counsel, you're talking down into your paper. Okay, I'm sorry. And I'm not getting what you're saying. Okay. So why don't you start again? Why don't you tell me this? Is your point that the three strikes rule should not apply because there's imminent danger of serious injury, and that's what we ought to concentrate on? That is one of our points. Which would you rather argue first, that there are no three strikes or that there's an exception to the three strikes rule? Take your pick. There are no three strikes. Hmm? I'll start with there are no three strikes. There are no three strikes. Okay. Lead off. Okay. There are no three strikes. The district court- There are no strikes or there are not three strikes? Well, we would say there are no strikes. One of the strikes or one of the dismissals that the district court counted as a strike was dismissed under Heck v. Humphrey. One of the issues in this case, which I'll get to after these threshold issues, is that a dismissal under Heck v. Humphrey should not be counted as a strike. That's one. Two of the dismissals- Which one is that? That's the first one. It's a case that was brought in 2009. What's the name of it? I don't have the name of it in my notes, but it's the case that begins with 09. I had them written down under their numbers. But we conceded in the opening brief that that dismissal, if a dismissal under Heck v. Humphrey- It's a jurisdictional dismissal. Let's go on to the next one. Okay. He brought two cases in 2010. Both of them were called Washington v. California Supreme Court. They were both styled as petitions for writs of mandamus under the All Writs Act. If you read what they were asking for, they were, in substance, asking for habeas-type relief, not a 1983-type claim that the Prison Litigation Reform Act is intended to cover. So for some of the reasons that were discussed in the prior matter, those should be construed, or should have been construed, as petitions seeking habeas relief that are exempt from being considered a strike. The fourth dismissal that the district court counted, which was brought in 2012, called Washington v. City of Los Angeles, the district court itself noted it was dismissing it for lack of jurisdiction under Younger. So that's not a strike. And those are the four that the district court counted. When we go for a moment to the HEC dismissals, there are three circuits besides our own that have considered whether HEC dismissals can be considered strikes. You've got Smith v. Veterans Administration in the Tenth Circuit. You've got Enright-Jones in D.C. Circuit and Hamilton v. Lyons in the Fifth Circuit. And each of them have concluded that HEC dismissals may constitute strikes. The reasoning is a little different in each one, but if I understood you correctly, you were saying that they don't and can't constitute strikes. Can you address why these other circuits are wrong in their determination? Yes. Those other circuits, as far as can be seen in the opinions, did not really analyze or discuss the issue. They just concluded that a HEC dismissal is a dismissal for failure to state a claim because HEC imposed the requirement that the conviction be set aside as an element of the 1983 cause of action. But a closer reading of HEC shows that's not what was happening in HEC for several reasons. One is, straight from the language of the HEC opinion itself, it repeatedly says that a 1983 claim for damages that is brought before the conviction has been set aside is not cognizable. Cognizable is a jurisdictional concept. I have a quote from Black's Law Dictionary, which defines cognizable as capable of being tried or examined before a designated tribunal within the jurisdiction of court or power given to the court to adjudicate the controversy. That's the way that the HEC opinion itself characterizes the dismissal. And there's other language in HEC that makes it seem like a jurisdictional concept. The court said the cause of action has not yet accrued and does not exist. Those seem to be referring to a ripeness concept, which is jurisdictional as well. In addition, HEC was simply expanding the rule from the prior Pizer v. Rodriguez case into a damages context. The Pizer opinion really is couched more explicitly in terms of jurisdiction, especially if you look at the dissent in that case. It's really talking about how a court has no jurisdiction under 1983 to decide a case. Since there are some challenging issues in the strikes department, I was frankly taken by this imminent danger of serious physical injury issue in your client's case. What case do you cite as being the closest to your client's situation for purposes of our analysis of that safety valve, if you will? Well, Andrews v. Cervantes is close in the sense that it says that there need only be a plausible allegation of an imminent danger at the time that the complaint is filed. It also, in Andrews, the magistrate judge had given the prisoner leave to amend to elaborate on his situation. I think the Lopez case talks about or it has a very pretty liberal approach to what needs to be alleged. In this case, Mr. Washington alleged in his complaint that he had been hurt in a fall and was not being given appropriate treatment. Can you help me with the timing on these things? He alleged that he was assaulted by three inmates in his cell at the CR-16. He received a broken nose, head trauma, was denied follow-up medical treatment after the passage of over one month. And then he talked about a second fall. How long a time period occurred between these two instances? Between the two incidents discussed in the complaint, I believe it's about a month, but the imminent danger issue goes only to the second incident, which is in June. He filed his complaint the next day after he got hurt. And that's the concussion-like symptoms that he referred to, right? Right. Now, the complaint itself does not allege the concussion-like symptoms because he filed his complaint either that day or the next day. The concussion-like symptoms became known within several other days after that. Of what serious injury is he in imminent danger? The broken nose of the first fall? No, no. But the concussion-like symptoms? Well, his face had swollen up. He felt dizzy. Is it still swollen up? It was swelling up at the time. Because it fell on his face, right? Right. Now, is that an imminent danger of serious injury? The danger was that he was exhibiting symptoms of a concussion but was not being able to get medical treatment and had actually been put in administrative segregation. How long after he filed the complaint was he taken to the emergency room? One day or two days. Okay. So he did get treatment? He got treatment after he filed the complaint. And the time period for assessing the imminent danger is the filing of the complaint. And the doctors at the medical facility said what about his, in quotes, concussion-like symptoms? Well, what's in the record is they gave him some testing and the tests were inconclusive, and ultimately they gave him painkillers and sent him back. So what testing did they do? MRI? I believe so. CT scan? I believe so. So that's what you do, right? I mean, what else could they do? We're not saying that was the inappropriate medical treatment. What was inappropriate was that as of the time he had filed the complaint, he had simply been examined by a nurse. He was told that no doctor would examine him because he was faking his symptoms, and he was then put into administrative detention. Well, the NFL doesn't look after people for years. Why is this a problem? Or at least allegedly they don't. Allegedly, yes. I think you've run out of time. We'll give you some time for a vote. Okay, thank you. Counsel, let me ask you a question. Sure. Let's forget about the broken nose for a while. Okay. The second claim is that he's in imminent danger of serious injury because the left side of his face swollen up, and it is swollen and numb. Right. And when I hear numb, I think of nerve damage. Why isn't that a serious injury? Your Honor, what the facts before the Court at this particular point in Appellant's complaint, he alleges that he slipped and he fell. He doesn't allege that he was unconscious, that his speech was slurred, that he had a loss of memory, that he couldn't walk. He was immediately taken to the Twin Towers Medical Facility, and at that point he immediately was seen by a nurse who began giving him a head exam. He had no lacerations, none of that. Mr. Washington, in his own complaint, admits that he started getting aggressive with this nurse, told the nurse that he demanded to see a doctor, that he told her to stop or him to stop, and that nurse continued with the head exam, gave him some pain medication, put him in a holding cell for an hour, and then sent him back to housing. At that point, that is what you do for a head injury. He got the head trauma checked out, he was observed, and he got pain medication, and it was acknowledged during opposing counsel's argument. Two days later, he went to the hospital and received the exact same medical treatment. Mr. Washington, what he's trying to do is disagree with the treatment that he received or refuse the treatment and then claim imminent danger. And under those circumstances, that doesn't give rise to imminent danger, just because he doesn't agree with the treatment that he received or he doesn't get treatment after he refuses it. So I gather it's the government's position that after the fall, he got a perfectly appropriate treatment. He may not have liked what he got, but he got the normal treatment, and shortly thereafter, within a day or something like that, he was taken to the hospital. MRI, CT scan, basically anything that a person outside of prison would have gotten to determine whether there was in fact a concussion. Is that the government's position? Correct, Your Honor. While what's at issue is what the court knew or what was at issue at the time they filed the complaint, what occurred afterwards just further supports, I believe, the appellee's position that his treatment at the time of the injury, which was within minutes, I mean he's not alleging that he waited hours or days before receiving treatment, was the exact treatment he received at the hospital, and therefore nothing about what he received was inadequate, he wasn't in imminent danger, and therefore he fails to allege sufficient facts to satisfy the imminent danger. What condition does he allege he's in danger of, pardon me for the dangling proposition? I believe Mr. Washington was alleging that he had a head trauma and he didn't get the correct medical treatment for a head trauma. But the case law... Didn't have to do with nerve damage? Correct. I mean, he states in his, if I'm not mistaken, the appeal to this court, he includes information about numbness and vomiting and the fact that he went to the doctor. That is not properly before the district court because it happened subsequent to the district court's ruling, nor was it relevant to this decision since it's... One minute, so you're saying that these other symptoms occurred after the district court heard the case? He filed the lawsuit the day after he slipped and fell, the day after he received the medical treatment, the pain medication, the hour-long observation by the nurse who then released him back to housing. And at that point, Mr. Washington was not in any imminent danger, nor do I think he was in imminent danger beyond that point either, as was shown by his records at the hospital. So I think based on the facts that were put into his complaint, he failed to allege the sufficient facts. Can we move to the strike portion of this? What cases do you believe constitute the three best, if you will, strikes that apply in this case from your perspective? First of all, I have the case numbers because that's kind of how I've been going through it, but the first one is the HEC issue, which is 093052. 09? 3052. 502. 10964. Is it 2010? Correct. 2010. 10? 964 is the first or the second. So we have the HEC case, the second writ of mandamus, and then the second 1983 cause of action, which is 127429. And if I can go in order, just help the Court understand the government. Those are your three best claims about strikes? Three best, correct. The HEC dismissal, which I think is one of the primary issues before this Court and we were asked to specifically brief, I believe that a HEC dismissal is a failure to state a claim. Failure to state a claim is a strike. And this Court in Butterfield v. Bail specifically held that. When you say failure to state a claim is a strike, isn't that to some degree modified by what the Court says about it? So, for example, if it doesn't get blown out on 12b-6, but it's in summary judgment and the summary judgment mentions nothing about the magic language from the PLRA, that doesn't necessarily constitute a strike, does it? I think the important court for the purposes of determining strikes is the court that is reviewing it for determining the strikes. What rule they determined or what rule the trial court or district court originally, looking at it, determined it was a dismissal, is informative, but it's not dispositive. So the district court in this case, as well as this Court today, look at these cases in order to determine whether or not they constitute a strike. A failure to state a claim is defined as, you know, it's equivalent to 12b-6. And Appellant, in his opening brief, acknowledged that a dismissal based on a finding that the facts alleged by plaintiff do not support recovery under any cognizable legal theory. Significantly, this is the language that both Appellant pointed to and Heck included in its opinion. The Court specifically said in Heck that it was a 1983 action that fails to invalidate a prior conviction, fails to state a cognizable claim. He hasn't proven this element or this requirement, which you have to invalidate that. This circuit, this court in Butterfield v. Bales, specifically said a Heck dismissal is a dismissal for a failure to state a claim. Therefore, we just have one extra step under the plain language of the Prison Litigation Reform Act that a failure to state a claim is a strike. So A to B, B to C, and now we have to decide A to C. So for those reasons, and also consistent with what was discussed previously, multiple circuits across the country have held that a Heck dismissal is a strike. District courts, both in and out of the circuit, have held it's a strike. And importantly enough, the district court in Mr. Washington's underlying case dismissed his case as a Heck dismissal for a failure to state a cognizable claim. Let's go to the 2010 case. Sure. Your opposing counsel says that's a mandamus case under the All Writs Act and should be characterized, as we discussed in the prior case this morning, as a habeas matter. And if it's a habeas matter, it's not counted under 1219.15. I believe, Your Honor, that the circuits are somewhat split into how to determine writs of mandamus. And in this particular case, and I would urge the court to go with, I believe it's the Tenth Circuit, just quickly, who basically held that a writ of mandamus is properly considered a civil action for the purposes of the Prison Litigation Reform Act. What do you say about the case that we talked about in the last, Tucker v. Coleman, saying just the opposite, that it should be considered to be a habeas case? Consider the form of the action? Yeah. I think what's also important to consider, particularly in this second case, is that Mr. Washington, this goes directly to the heart of the Prison Litigation Reform Act. The Prison Litigation Reform Act was designed to prevent frivolous lawsuits, and Mr. Washington, we're not talking about the first writ of mandamus, we're talking about the second one he filed a month later that was identical to the first one. He knew full well, filing that second lawsuit, same facts, same arguments, same everything, knowing that it was going to be dismissed. And with no regard for the resources that it would require on the court's end and so on and so forth, he filed this lawsuit, which directly goes to the frivolousness, maliciousness, that the Prison Litigation Reform Act is designed to prevent and to stop. So that's the same argument for both the writ of mandamus argument 964 and 7429, which was the second 1983 cause of action. Again, Mr. Washington, about a month or two after, files an identical, virtually identical, I believe he added a defendant or two, 1983 action, despite the fact that it had been already dismissed, and that goes directly to the purposes of the Prison Litigation Reform Act. And for those reasons, he's got a hectus missile, which is a strike, and two identical litigations that were dismissed and then refiled as strikes. And he does not meet the imminent danger exception, and therefore the proper decision here is to affirm the district courts. Now, you said the 2012 action was not dismissed under lack of jurisdiction, but was dismissed on the merits? What I believe for the 2012 dismissal, the court dismissed it under younger, but significantly also checked the frivolous, malicious, and fails to state a claim box, as well as this may constitute a strike. So I think it was Knapp, the court in Knapp said specifically, you consider why the court dismissed something as informative, but it's not dispositive. And so while it might have been dismissed under younger, it was also a frivolous lawsuit. Thank you. We've taken you past your time. Do you want a minute for rebuttal? Thank you, Your Honors. I just have a few points to respond. On the imminent danger, this court has held the plaintiff need only state a plausible allegation of imminent danger. He also should be allowed leave to amend if there's any possibility that he could elaborate. But counsel, how does that work? I mean, in reality, we've got these allegations, some of which came up after the district court had its hearing, right? Is that wrong? No. They came up after he drafted the complaint. Okay. Well, the district court considered the complaint, right? And if it isn't in the complaint, then what do we do with it? Well, he's a prisoner, a pro se prisoner. This should all be treated with policy towards liberal standards. He alleged a physical incident where he was hurt. That's in the complaint. He was hurt, and he was treated by a nurse. They told him he could not see a doctor because he was faking it. But he did see a doctor. He went to a hospital. That had not happened. He got a CT scan. He got an MRI. That had not happened. I'm just talking practically. Okay. How are we supposed to deal with this thing? I mean, you look at the face of the complaint. Some of his allegations that you feel are most important now are not in there. You want us to construe it liberally. On the other hand, the government says, well, wait a minute, you know, he wanted to go to the hospital. He did go to the hospital. And here's what happened. You're suggesting we consider what he didn't allege in the complaint because he's a prisoner and we should construe it liberally, but you don't want us to consider what the state actually did in connection with taking him to the hospital? Well, the standard, the time for evaluating the imminent danger is the time when the complaint was filed. And when the complaint was filed, he had not seen a doctor. He had not been transported by ambulance. He had seen a nurse. He got all his various treatments. He was aggressive with her. He got the same medication he ultimately got at the hospital. So what's wrong with that? But there was enough of a problem that he ultimately was determined that he needed to go to the hospital. So the state of affairs when he filed the complaint is he was a person that needed to go to the hospital, was asking for a doctor to see him, and was being told he was faking it, and was actually written up with an accusation of creating a false emergency. But his complaint that got him to the hospital occurred after he filed his original complaint, right? No. He was complaining all the time. But it wasn't in the complaint. What got him to the hospital, if I understand it correctly, was something that he changed in terms of the allegation. Is that wrong? It's that his face swelled up after the next day. But could I just briefly address some of the other points other than the imminent danger? On the strikes, this court itself, as you're aware, has noted that a mandamus petition is not to be treated as something under the PLRA in the Tucker case and also in Andrews v. King. So neither one of the mandamus petitions would qualify as a strike. The 2012 case, the district court checked the box that said it has no jurisdiction. It was dismissing the case under Younger, which, while not technically a jurisdictional doctrine, this court in the Panatella case said it's essentially jurisdictional. So I would submit a case dismissed under Younger is also a case that's dismissed, in effect, for lack of jurisdiction. This court in Butterfield did not hold that a HEC dismissal is for failure to state a claim. It simply assumed for the purposes of the case before it that it was for failure to state a claim. This court also much more recently assumed that a HEC dismissal is for lack of jurisdiction in the Lockett case. So it has not been decided. Many other courts have treated a HEC dismissal as jurisdictional, not in the context of strikes, but in the context of a question of whether the defendant had waived the right to raise a HEC defense. And a number of courts in other circuits have treated a HEC – the HEC defense as a non-waivable subject-matter jurisdiction. Thank you very much. We're getting over your time. Thank you very much. Thank you, counsel, for the illuminating argument. And we'll go to the next case, which is
judges: Farris, Bea, M. Smith